UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHAWN M. HILL,

    Plaintiff,

        v.                               CAUSE NO. 3:21-CV-611-JD-MGG

SANDERS, et al.,

    Defendants.

## OPINION AND ORDER

Shawn M. Hill, a prisoner without a lawyer, filed an amended complaint. ECF 19. "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. The court applies the same standard as when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must state a claim for relief that is plausible on its face. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation

marks and citation omitted). A plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006). In addition, the Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). When the plaintiff references and relies on it, "the contents of that document become part of the complaint and may be considered as such when the court [determines] the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted).

On August 7, 2021, Hill called Correction Official Sanders over to his cell at the Indiana State Prison (ISP) because he did not get a lunch tray. C.O. Sanders said, "That sucks for you." ECF 19 at 2. Hill responded by saying, "What the fuck did you just say? Okay SANDERS, I need a grievance to put your name on." *Id.* (capitalization and underlining in original). C.O. Sanders then asked Hill's neighbor for a cup of water, and he immediately turned and threw the water in Hill's face. C.O. Sanders told Hill, "Bitch, if you say my name to anyone, you will not make it out of D-cell House alive." *Id.* (underlining in original). According to Hill, the water that hit him destroyed his personal pictures and legal work.

Hill alleges C.O. Sanders "assaults inmates probably once a week," but he does not provide any details as to the types of alleged assaults. *Id.* at 3. Hill claims this has been reported to Warden Ron Neal "many times," but he has refused to do anything. *Id.* According to Hill, Commissioner Robert E. Carter has also "been notified of the staff assaults in D Dorm" and has not rectified the situation. *Id.*

Hill, a pretrial detainee, claims C.O. Sanders retaliated against him in violation of the First Amendment and used excessive force against him in violation of the Fourteenth Amendment. He also claims Warden Neal and Commissioner Carter failed to protect him from the attack. Finally, he claims Warden Neal and Commissioner Carter were negligent "for failing to instruct, supervise, control, and discipline" the staff at ISP. *Id*. at 4. Hill has requested monetary damages and "as many criminal charges as possible."[1] *Id*. at 5.

Because Hill alleges he was a pretrial detainee when these events occurred, his claims must be analyzed under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). "Pre-trial detainees cannot enjoy the full range of freedoms of unincarcerated persons." *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991) (citation omitted). Nevertheless, the Fourteenth Amendment prohibits "punishment" of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee states a valid Fourteenth Amendment claim by alleging that (1) the defendant "acted purposefully, knowingly, or perhaps even recklessly," and (2) the defendant's conduct was "objectively unreasonable." *Miranda*, 900 F.3d at 353–54. "A jail official's response to serious conditions of confinement is objectively unreasonable when it is 'not rationally related to a legitimate nonpunitive governmental purpose[.]'" *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)). In determining whether a challenged action is objectively unreasonable,

---

[1] Criminal charges are not available as a remedy in civil litigation.

courts must consider the "totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021). "[N]egligent conduct does not offend the Due Process Clause," and allegations of negligence, even gross negligence, do not suffice. *Miranda*, 900 F.3d at 353.

To establish an excessive force claim under the Fourteenth Amendment, the plaintiff must allege "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. 396-97. In determining whether force was objectively unreasonable, courts consider such factors as the relationship between the need for force and the amount of force that was used, the extent of any injuries the plaintiff suffered, and the severity of the security problem. *Id.* at 397. "[N]ot every use of force is a punishment: 'Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention.'" *Husnik v. Engles*, 495 Fed. Appx. 719, 721 (7th Cir. 2012) (quoting *Bell*, 441 U.S. at 537).

Here, the amount of force deployed was minimal. There is no suggestion the water was hot or scalding—indeed, considering Hill has alleged it was from his fellow inmate's drinking cup, it may be assumed the water was cool or lukewarm. Hill has neither alleged the cup hit him (in fact, he reiterates it was only the water that struck him) nor that he suffered any physical injuries due to the incident. Although unpleasant and arguably childish, throwing a cup of cool water on an inmate during a heated verbal exchange is a *de minimis* use of force. *See e.g. Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) ("[N]ot every 'malevolent touch' by a security officer implicates the

4

Constitution." (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *see also Kingsley*, 744 F.3d at 455 (noting with approval a jury instruction that required "some harm" as an element of the claim); *Carr v. Beth*, 465 Fed. Appx. 567, 571 (7th Cir. 2012) (construed in inmate's favor, allegations that guards twisted his arm, sprayed him with pepper spray, kicked him in the leg, and "suffocated him with water from a hose" were "severe enough [to] rise above de minimis contact" necessary to state a claim). Thus, Hill has not stated a Fourteenth Amendment excessive force claim. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) & *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006) (plaintiff can plead himself out of court if he pleads facts that preclude relief).[2]

Hill also claims C.O. Sanders retaliated against him. "To establish a prima facie case of unlawful retaliation, a plaintiff must show (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Douglas v.*

---

[2] To the extent Hill is attempting to assert a Fourteenth Amendment claim based on the water damage to his photos and/or legal materials, he may not do so. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." However, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional depravation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 et seq.) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Even the destruction of legal materials is merely a property loss if the papers are replaceable. *Hossman v. Spradlin*, 812 F.2d 1019 (7th Cir. 1987). Furthermore, legal papers are not deemed irreplaceable merely because there is a cost associated with obtaining them. Therefore, Hill has not stated any claims with regard to the water damage to his property.

*Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). It is undisputed that "[a] prisoner has a First Amendment right to make grievances about conditions of confinement, including the mistreatment of his personal property." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010) (citing *Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2005) (addressing a prisoner's grievance about a guard's tampering with his typewriter)). However, that right must be exercised "in a *manner* consistent with his status as a prisoner." *Id*. (emphasis in original, citation omitted).

In *Bridges v. Gilbert*, an inmate alleged he had communicated a protected grievance when he "threatened the Defendant that he was going to file a grievance against her because it was inappropriate for her to kick his cell door, turn his lights on and off, and slam his cell trap while he was sleeping." *Bridges v. Gilbert*, 557 F.3d 541, 554 (7th Cir. 2009). In rejecting that argument and affirming the district court's dismissal order, the Seventh Circuit noted, "it seems implausible that a *threat* to file a grievance would itself constitute a First Amendment-protected grievance." *Id*. at 555 (emphasis in original); *see also Clark v. Reed*, 772 Fed. Appx. 353, 355 (7th Cir. 2019) (citing *Bridges* and finding qualified immunity applied to shield the defendant because it had not been clearly established "that a threat to file a grievance was protected"); *Cobian v. McLaughlin*, 717 Fed. Appx. 605, 612–13 (7th Cir. 2017) (citing *Bridges* and finding the inmate's "threat to go to court" if the prison staff member did not perform research and update his file as requested was not a protected activity).

Here, Hill alleges he threatened to file a grievance when he responded to C.O. Sanders's dismissive comment by stating, "What the fuck did you just say? Okay

6

SANDERS, I need a grievance to put your name on." As noted above, threatening to file a grievance is not protected activity under the First Amendment. *See e.g. Bridges*, 557 F.3d at 555. Moreover, as in *Watkins*, Hill did not "confine himself to a formal, written grievance or a courteous, oral conversation" with C.O. Sanders about the issue. *Watkins*, 599 F.3d at 798. Instead, he confronted him within earshot of at least one other inmate—his neighbor from whom C.O. Sanders retrieved the cup—in a disrespectful manner using foul language. This "confrontational, disorderly manner" in which Hill responded to C.O. Sanders further removed his request from the protections of the First Amendment. *Id*. at 798–99 (citing *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) ("characterizing a prisoner's foul comment to a prison official that was 'insulting, derogatory, and questioned her authority' as unprotected speech")); *see also Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015) ("[B]acktalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected" because it can often lead to violence.). While the Court does not condone the action of C.O. Sanders, Hill's comment is not considered protected speech. Therefore, he has not stated a retaliation claim.

Hill also asserts Warden Neal and Commissioner Carter failed to protect him from the assault. Not only has the court concluded that Hill's allegations against C.O. Sanders did not constitute an impermissible use of force resulting in an independent constitutional violation, but the failure to protect claim fails on its face as well. In the Eighth Amendment context, a plaintiff bringing a failure-to-protect claim must allege that "(1) he is incarcerated under conditions posing a substantial risk of serious harm,

and (2) defendant-officials acted with deliberate indifference to that risk." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (quotation marks omitted). In adapting this to the Fourteenth Amendment context, the subjective deliberate-indifference standard is replaced by an objective unreasonableness standard. Therefore, a plaintiff must allege that (1) a defendant's intentional, purposeful, or perhaps reckless act or omission placed plaintiff in substantial risk of serious harm, and (2) the act or omission was objectively unreasonable. The Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown*, 398 F.3d at 911. Reasonableness "must be determined in light of the totality of the circumstances." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

Here, Hill alleges Warden Neal and Commissioner were notified that C.O. Sanders assaulted inmates "probably once a week." However, there are no details about those alleged assaults provided, and there are no allegations to suggest that either were aware of any specific threat—let alone a substantial risk—to Hill. Thus, he has not stated a failure to protect claim.

Finally, Hill claims Warden Neal and Commissioner Carter were negligent "for failing to instruct, supervise, control, and discipline" the staff at ISP. *Id*. at 4. Negligence does not constitute a constitutional violation. *See Kingsley*, 744 F.3d at 450 ("Notably, the Due Process Clause provides its own limiting principle; the Clause protects against only abusive conduct that is more than negligence, or even gross negligence.") (internal citations omitted). Moreover, "there can be no liability . . . for failure to train when there has been no violation of the plaintiff's constitutional rights." *Jenkins v. Bartlett*, 487 F.3d

8

482, 492 (7th Cir. 2007). Plus, officials cannot be held liable simply because they hold supervisory positions at the prison. *See e.g. Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (Liability under 42 U.S.C. § 1983 is based on personal responsibility, and supervisory defendants cannot be held liable for the misdeeds of other prison staff.); *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (same). Therefore, these claims against Warden Neal and Commissioner Carter must also be dismissed.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED pursuant to 28 U.S.C. § 1915A.

SO ORDERED on June 7, 2022

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT

9